IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN L. DYE, JR.,

                Plaintiff,                         OPINION and ORDER

        v.                                    14-cv-76-bbc

BRYAN BARTOW, ERIC, DR. GAANAN,
LOYDA LORIA, DR. ANDRADY,
SUSAN KOON, CATHY NEMETH,
LARRY JENKINS, ROBERT HUMPHERYS,
DENISE SYMDON, HOLLY GUNDERSON,
LON BECHER, MARY KLEMZ, CATHY JESS
and JOHN DOES,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff John Dye, a prisoner incarcerated at the Waupun Correctional Institution, has filed this proposed lawsuit, alleging that prison officials have failed to adequately address his severe neck pain. Plaintiff has "struck out" under 28 U.S.C. § 1915(g) because on three different occasions he has filed lawsuits that were dismissed as frivolous. This means that he cannot qualify for indigent status under § 1915 in any suit he files during the period of his incarceration unless he alleges facts in his complaint from which an inference may be drawn that he is in imminent danger of serious physical injury.

After reviewing plaintiff's complaint, I conclude that he may proceed against defendant Eric, a therapist, but I will stay the proceedings because the vast bulk of his

1

allegations do not satisfy the pleading requirements of Federal Rule of Civil Procedure 8.

I draw the following facts from plaintiff's complaint.

ALLEGATIONS OF FACT

Plaintiff John Dye who is now housed at the Waupun Correctional Institution. However, the events that form the basis of his claims took place at the Wisconsin Resource Center, his previous place of incarceration.

On January 23, 2013, plaintiff was transferred to the Wisconsin Resource Center. From that date forward until the time he filed this complaint (early February 2014), plaintiff complained about severe pain in his neck. Plaintiff rated his pain as a "ten" on a scale of one to ten. Plaintiff submitted numerous health service requests about his neck pain.

Plaintiff was seen by defendant Dr. Gaanan twice; once on January 23, 2013 for an "initial exam" (after which he received an x-ray, the results of which I understand showed mild degenerative arthritis), and once on March 5, 2013, for a followup regarding his blood pressure, at which time he asked the doctor to look at his deformed thumb. Gaanan increased plaintiff's dosage of Relafen (it is unclear whether plaintiff was prescribed this drug for pain in his thumb, his neck or both, but at this point I will assume that it was prescribed at least in part for his neck).

Plaintiff was seen by defendant Dr. Loyda Loria twice, on February 4 and May 22, 2013. In the second appointment, Loria looked briefly at plaintiff's neck but did no more than raise plaintiff's arms and then deny plaintiff the MRI he requested, suggesting that this

was a last resort after therapy. Plaintiff was concerned that therapy would only hurt him further.

Plaintiff requested a change in medication after the Relafen provided him no relief. His prescription was changed to Naproxen (plaintiff does not say who changed it) but this medication did not provide any relief either. Also, plaintiff was prescribed capsaicin cream, which he had to stop using because he could not fully wash it off his hands and it would end up getting in his eyes, causing extreme burning. Plaintiff requested a pain patch but was told it was not available. He resorted to "muscle rub and/or Ben-Gay." This only eased some of his pain.

Plaintiff received three therapy sessions in July 2013 with defendant Eric, who stopped the sessions on July 24, 2013, stating that those were all the doctor ordered. Plaintiff believes that defendant Eric had the power to hold more sessions. Plaintiff met with defendant Loria on August 8, 2013, where he found out that Eric had reported falsely that plaintiff missed two sessions.

Plaintiff's pain has gotten progressively worse and now affects his head and left side of his face and throat. Each of the named defendants has "in some way impeded and hindered" plaintiff's ability "to be seen by a General Medicine doctor; informing him that he must first be seen by a psychiatrist who will then determine if he will or will not be seen by a general medicine doctor."

DISCUSSION

A.  Imminent Danger

Plaintiff seeks leave to proceed in forma pauperis in this case.  However, as stated above, plaintiff has struck out under 28 U.S.C. § 1915(g).  This provision reads as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

On at least three prior occasions, plaintiff has brought actions that were dismissed because they were frivolous, malicious or failed to state a claim upon which relief may be granted. Dye v. Bartow, No. 07-3836 (7th Cir. June 12, 2008); Dye v. Kay, No. 00-C-1058 (E.D. Wis. Apr. 23, 2001); Dye v. Milwaukee Journal Sentinel, Inc., No. 99-C-1324 (E.D. Wis. Dec. 28, 1999).  Therefore, he cannot proceed in forma pauperis unless I find that he has alleged that he is in imminent danger of serious physical injury.

To meet the imminent danger requirement of 28 U.S.C. § 1915(g), a prisoner must allege a physical injury that is imminent or occurring at the time the complaint is filed and show that the threat or prison condition causing the physical injury is real and proximate. Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. 2003) (citing Heimermann v. Litscher, 337 F.3d 781 (7th Cir. 2003); Lewis v. Sullivan, 279 F.3d 526, 529 (7th Cir. 2002)).  In his complaint, plaintiff alleges that he is not receiving proper care for his neck pain.  I conclude that these allegations are sufficient to show that he was in imminent danger of serious

4

physical harm at the time he filed his complaint.


B.  Initial Partial Payment

Although I conclude that plaintiff's claims regarding his treatment satisfy the imminent danger standard, plaintiff has not shown that he qualifies to proceed in forma pauperis from the financial standpoint.  Plaintiff is still required to submit a six-month trust fund account statement so that the court can calculate an initial partial payment of the fee. Plaintiff's complaint was filed on February 5, 2014.  His trust fund account statement should cover the six-month period beginning approximately August 5, 2013 and ending approximately February 5, 2014.  Once plaintiff has submitted the necessary statement, I will calculate his initial partial payment and advise him of the amount he will have to pay. Plaintiff should show a copy of this order to prison officials to insure that they are aware they should send a copy of plaintiff's six-month trust fund account statement to this court. Ordinarily, I would wait for plaintiff to submit his initial partial payment before screening his complaint. However, because plaintiff alleges that he is imminent danger of serious physical harm, I will proceed to screen his complaint immediately.  Plaintiff is still required to submit his trust fund account statement and the initial partial payment or the court will consider closing the case for plaintiff's failure to comply with 28 U.S.C. § 1915.


C.  Screening Plaintiff's Claims

In screening plaintiff's claims, the court must construe the complaint liberally.

Erickson v. Pardus, 551 U.S. 89, 94 (2007).  However, I must dismiss any claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted or ask for money damages from a defendant who by law cannot be sued for money damages.  28 U.S.C. § 1915(e)(2)(B).  I understand plaintiff to be bringing claims that prison officials violated his right to medical care under the Eighth Amendment by failing to provide him with adequate treatment for his neck pain.

Under the Eighth Amendment, prison officials have a duty to provide medical care to those being punished by incarceration.  Estelle v. Gamble, 429 U.S. 97, 103 (1976).  To state an Eighth Amendment medical care claim, a prisoner must allege facts from which it can be inferred that he had a "serious medical need" and that prison officials were "deliberately indifferent" to this need.  Id. at 104.

A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person.  Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006).  A medical need may be serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, Gutierrez v. Peters, 111 F.3d 1364, 1371-73 (7th Cir. 1997), "significantly affects an individual's daily activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), or otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825, 847 (1994).

"Deliberate indifference" means that defendant was aware that the prisoner needed medical treatment but disregarded the risk by failing to take reasonable measures.  Forbes

v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).  A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain. Estelle, 429 U.S. at 104-05; Gayton v. McCoy, 593 F.3d 610, 619 (7th Cir. 2010); Edwards v. Snyder, 478 F.3d 827, 832 (7th Cir. 2007).  However, inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment.  Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996); Snipes, 95 F.3d at 590-91.  Thus, disagreement with a doctor's medical judgment, incorrect diagnosis or improper treatment resulting from negligence is insufficient to state an Eighth Amendment claim.  Gutierrez, 111 F.3d at 1374; Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006) ("[E]ven admitted medical malpractice does not give rise to a constitutional violation.").

At this point I conclude that plaintiff has alleged that he has a serious medical need in the form of his allegedly severe neck pain.  However, for the most part, plaintiff has failed to identify the proper defendants.  Liability under § 1983 must be based on a defendant's personal involvement in the constitutional violation.  Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995).  Plaintiff provides very few allegations against individual defendants, and most of those have to do with the very beginning of his care at the Wisconsin Resource Center, where it appears that defendants Gaanan and Loria at least made some attempt at diagnosing his problems and treating him.  I conclude that he may proceed on a claim against defendant therapist Eric, who plaintiff believes was responsible for ending his therapy and lying about the reasons for it.  But the vast majority of the picture remains extremely

unclear: plaintiff alleges that he is being forced to see a psychiatrist before he will be allowed to see a general practitioner and alleges that each defendant is responsible, but he names fifteen people in a wide variety of roles (ranging from nurse to warden to assistant administrator of the Department of Corrections Division of Adult Institutions) as defendants even though it seems extremely unlikely that all of these people are responsible for his course of treatment.

Under Fed. R. Civ. P. 8, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." EEOC v. Concentra Health Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007). Plaintiff's complaint (other than his allegations against defendant Eric) does not meet this standard. I conclude that the vast majority of plaintiff's allegations fall short of this standard because I cannot tell why each individual defendant might be liable.

Accordingly, I will stay further proceedings and give plaintiff a chance to submit an amended complaint that better explains why he is suing each of the named defendants. Plaintiff should draft the amended complaint as if he were telling a story to people who know nothing about his situation. This means that someone reading the complaint should be able to answer the following questions:

- What are the facts that form the basis for plaintiff's claims?

- What actions did each defendant take that violated plaintiff's rights?

- In particular, to whom has plaintiff complained about the current status of his treatment, and how did they respond?  Who told him that he needs to see a psychiatrist before he sees a general practitioner?

Plaintiff's allegations against defendant Eric are a good example of the right way to go about stating a claim; plaintiff has described what Eric did to show deliberate indifference to his neck pain—cancel the course of therapy sessions and lie about the reason.  Plaintiff's amended complaint should include all of his allegations against Eric as well as explain the basis for his claims against the other defendants. (His amended complaint should be intended to completely replace his current one; the court will not piece together several documents to arrive at one operative complaint.)

I will give plaintiff a short deadline to provide an amended complaint.  Should plaintiff fail to provide an amended complaint by this deadline, he will be allowed to proceed only with his claims against defendant Eric.

### D.  Motion for Assistance in Recruiting Counsel

Finally, plaintiff has filed a motion for the court's assistance in recruiting counsel to help him with this case.  In deciding whether to grant such a motion, I must first find that plaintiff has made reasonable efforts to find a lawyer on his own and has been unsuccessful or that he has been prevented from making such efforts.  Jackson v. County of McLean, 953 F.2d 1070 (7th Cir. 1992).  To show that he has made reasonable efforts to find a lawyer, plaintiff must give the court the names and addresses of at least three lawyers who he has

9

asked to represent him in this case and who turned him down.  Plaintiff has failed to include any such information.

Moreover, I would deny plaintiff's motion even if he had submitted proof that three lawyers had declined to represent him.  A court will seek to recruit counsel for a pro se litigant only when he demonstrates that his is one of those relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds his ability to prosecute it.  Pruitt v. Mote, 503 F. 3d 647, 654-655 (7th Cir. 2007).  At this point, it is far too early to tell wither this will be the case.  Plaintiff's current task is to provide allegations explaining why he believes that each named defendant violated his rights, a task that does not require the assistance of counsel.

ORDER

IT IS ORDERED that

1.  Plaintiff John Dye is GRANTED leave to proceed on an Eighth Amendment deliberate indifference claim against defendant Eric.

2.  The remainder of plaintiff's complaint is DISMISSED and further proceedings are STAYED; plaintiff may have until April 8, 2014 to submit an amended complaint that fixes the Fed. R. Civ. P. 8 problems discussed above.  If plaintiff fails to provide an amended complaint by this deadline, the case will proceed, but only against defendant Eric.

3.  Plaintiff may have until April 8, 2014, in which to submit a certified copy of his trust fund account statement as discussed above.  If plaintiff fails to respond to this portion

of the order, I will assume that he wishes to withdraw this action voluntarily.  In that event,

the clerk of court is directed to close this case without prejudice to plaintiff's filing his case

at a later date.

4.   Plaintiff's motion for the court's assistance in recruiting counsel, dkt. #3, is

DENIED without prejudice to him refiling the motion at a later date.

Entered this 19th day of March, 2014.


BY THE COURT:
/s/
BARBARA B. CRABB
District Judge